**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTT ANTONETTI, JERALD FUHRER** | ) | |
| **and CINDY NADIGER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No.  07 C 0768** |
| **v.** | ) | |
| **ABBOTT LABORATORIES,** | ) | **JUDGE DAVID H. COAR** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Scott Antonetti ("Antonetti"), Jerald Fuhrer ("Fuhrer") and Cindy Nadiger

("Nadiger") (collectively "Plaintiffs") are suing their former employer, Abbott Laboratories

("Defendant"), for reverse race and national origin discrimination in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 12101 *et seq.* and racial discrimination under

42 U.S.C. § 1981.  Nadiger brings an additional claim of retaliation against Defendant pursuant

to Title VII, 42 U.S.C. § 2000e-3.  Before this court now is Defendant's Motion for Summary

Judgment as to each count of Plaintiffs' Complaint.[1]  For the reasons set forth below,

Defendant's motion is **GRANTED**.

**I.     STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[1] Count VI was voluntarily dismissed under a separate order.

matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 252; *see also Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). This standard of review is applied to employment discrimination cases with "added rigor." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

## II. RELEVANT FACTUAL BACKGROUND

### Undisputed Facts Common to all Plaintiffs

Plaintiffs Antonetti, Fuhrer and Nadiger are all Caucasian Americans originating from within the United States. All three were Instrument Technicians employed by Defendant. Marvin Gloria and Juan Luna were also Instrument Technicians employed by Defendant, but Gloria is Asian and originates from the Philippines and Luna is Hispanic, originating from an unidentified predominately Hispanic country of origin, possibly Mexico. On June 10, 2006, a Saturday, Plaintiffs, Gloria and Luna worked an overtime shift for Defendant that began early that morning. At some point, the group left the Defendant's campus and visited a nearby restaurant where they had a sit-down breakfast. Antonetti concedes the group was gone for at

least thirty (30) minutes.  On a typical eight- hour day, employees such as the Plaintiffs are given two ten minute paid breaks and one thirty minute unpaid meal break.  Defendant's policy is to pay its technicians for breaks that do not exceed twenty minutes in the aggregate such that a paid break should not last more than twenty minutes.  The June 10, 2006 shift lasted only about five hours, not the normal eight hours, due to a technical problem that prevented the technicians from accomplishing their tasks.

The following Monday, June 12, 2006, all of the technicians went to work except Luna, who routinely took Mondays off.  Brian Gravander, the technicians' group leader, reviewed the technicians' time cards from Saturday and inquired whether the technicians had taken a lunch break (i.e- a meal break) during the shift.  In his deposition testimony, Antonetti stated that the technicians discussed whether to report that there had been no lunch, not in an effort to deceive, but rather because in Antonetti's view, the excursion to the restaurant was simply a break, not lunch.  Fuhrer admits that he initially told Gravander that he had not taken a lunch break.  However, Antonetti and Nadiger cannot recall whether they responded to Gravander that they had not taken any such break but they do not offer any evidence to rebut Gravander's account or to rebut Gravander's testimony regarding the notations of "NL" (no lunch) on their time cards.  According to Gravander, when he asked Plaintiffs and Gloria (as a group) whether Luna took a lunch break, one of them responded that he did not.  Gravander did not mark "NL" on Luna's timecard.  Luna was nonetheless paid as if he had not taken a lunch break (as were the other

technicians) because Gravander manually entered into the Defendant's computerized timekeeping system that none of the technicians took a lunch break on June 10.[2]

According to Luna, one of Defendant's senior supervisors, Larry Adams, approached him at a different Abbott facility and asked him about the alleged practice of going to breakfast on morning shifts and the over billing of clients. Luna acknowledged to Adams that he had been participating in such incidents by nodding his head affirmatively and he proceeded to tell Adams about the June 10 breakfast excursion. Adams then informed upper management about the incident. Raymond Hess, a human resources manager employed by Defendant, called Luna while he was in Mexico on assignment for Defendant.[3] Hess asked Luna about the events of June 10, 2006. Luna explained to him that they had indeed left the Defendant's premises and had a sit-down breakfast meal, but he could not remember the name of the restaurant. Once Luna returned to work, he met with Mike Patterson, Defendant's manager of corporate metrology, instrumentation and calibration services, the unit in which the technicians work.

In August, all three Plaintiffs were approached by Patterson about the off-site meal break of June 10, 2006, all three initially could not remember the details. Specifically, Antonetti stated he could not remember where they had gone and that sometimes workers went to McDonald's. Fuhrer stated he did not remember going off-site for breakfast on the date in question. Nadiger

---

[2] Plaintiffs assert this fact is disputed merely because Gravander and Hess testified they were not aware of a policy of Defendant's that employees were not automatically given a lunch or a break on Saturdays. That factual assertion speaks to Defendant's *policy* not the technical functioning of the computerized system, of which Plaintiffs do not produce any contrary factual assertions to counter how Gravander and Hess explained the system worked.

[3] Plaintiffs view Luna's filling in for another (Hispanic) employee on the Mexico assignment to be extremely suspicious as it conveniently removed Luna from the scene during the investigation period.

stated she did not remember whether they took a break on the date in question. Defendant asserts that it interpreted the Plaintiffs' inability to remember the details of the break along with their alleged representations to Gravander that they had not taken a meal break as an indication of deceitfulness. Thereafter, Plaintiffs and Gloria were suspended and later terminated. Defendant asserts that Plaintiffs and Gloria were terminated for falsifying time cards and not being forthright when questioned about it.

**Facts Relevant to the Retaliation Claim[4]**

Nadiger began to suspect she was a victim of gender discrimination in February 2006 when she did not receive a promotion while male employees who she believed to be less qualified, did. Over the course of several months she made inquiries to several supervisors as to why she was passed over. These supervisors include in order of rank: Group Leader Brian Gravander, Supervisor Greg Cichok, Section Manager John Salisbury, Manager of the Global Instrumentation and Calibration Services ("GICS") Dave Taylor and Director Mike Shalosky. Mike Patterson replaced Taylor as the manager of GICS in July 2006 and was not involved with the promotion decision in February. Nadiger states she did not file a formal complaint of gender discrimination because managers Taylor and Shalosky forestalled her from doing so by encouraging her to let them handle it and investigate why she did not receive a promotion. However, at the suggestion of Shalosky, Nadiger spoke to Nancy Libow, Defendant's Director of Global Environmental Health and Safety Services about career advancement. Nadiger told Libow that she thought she could never advance in her group because of her gender and Libow responded that Nadiger should go to human resources with her concerns. She gave Nadiger a

_____

[4] These facts are disputed but assumed as true for purposes of adjudicating this motion.

name and a business card of someone in human resources to whom Nadiger could approach. Also at Shalosky's suggestion, Nadiger talked to another senior management member, Shelly Shea, Director of the Office of Business Excellence.  In July of 2006, Mike Patterson was replacing Dave Taylor as the manager of Nadiger's department.  Nadiger states that she spoke to Patterson in July 2006 and he communicated to her that he was aware of the "ongoing investigation" regarding her complaints.  Patterson made the decision to terminate Nadiger and the other Plaintiffs in August 2006,  and Director Mike Shalosky typically reviewed Patterson's decisions.  Nadiger states that Patterson knew of "an ongoing investigation concerning her promotion" and that Shalosky was aware of an impending formal complaint of gender discrimination.

## III.    ANALYSIS

### A.    Race and National Origin Discrimination

Plaintiffs lack direct evidence to support their allegations of racial and national origin discrimination so they proceed under the burden-shifting method using indirect evidence as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973).  Under the burden-shifting approach, a plaintiff bears the initial burden of establishing a *prima facie* case of intentional discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505 (1993); *Hall v. Bodine Elec. Co.*, 276 F.3d 345, (7th Cir. 2002); *Miller v. Am. Fam. Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000); *Szymanski v. County of Cook*, 2002 WL 171977 at *5 (N.D.Ill.).  Once the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises, and the burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Szymanski*, 2002 WL 171977 at *5.  If the employer

satisfies that burden, the presumption of discrimination is rebutted, and the burden shifts back to the plaintiff to persuade the trier of fact either directly that a discriminatory reason more likely motivated the action or indirectly that the employer's articulated reason for the employment action is unworthy of credence and is but a mere pretext for intentional discrimination. *Id.*

In order to establish the *prima facie* case based on disparate discipline under the *McDonnell Douglas* schema, a plaintiff must provide evidence that "(1) he is a member of a protected class under Title VII, (2) his work performance met the employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly-situated employees outside of the protected class were treated more favorably by the employer. *Goodwin v. Bd. of Trust. of Univ. of Illinois*, 442 F.3d 611, 617 (7th Cir. 2006). If a plaintiff proceeding under the indirect method fails to establish any one of the four factors of the *prima facie* case, the court generally need not proceed any further and summary judgment will be entered for the defendant. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 331 (7th Cir. 2002); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680-681 (7th Cir. 2002).

The Seventh Circuit has stated that in so-called "reverse discrimination" cases, white Caucasian (or male) plaintiffs must show other "background circumstances" in lieu of their inability to satisfy the first element. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). The *Mills* court identified several kinds of background circumstances tests a plaintiff could use to establish a *prima facie* case in a reverse discrimination case. In *Harding v. Gray*, the court articulated two categories of evidence that satisfy the background circumstances test: (1) evidence indicating that the particular employer has some reason or inclination to discriminate invidiously; or (2) evidence indicating that there is something "fishy" about the

facts of the case.  9 F.3d 150, 152-53 (D.C.Cir. 1993) (cited in *Mills*, 171 F.3d at 455).

Something can be "fishy" if a plaintiff presents evidence that the employer's actions "departed

from the usual procedures in an 'unprecedented fashion.'"  171 F.3d at 455.

Here, Defendant contends summary judgment is appropriate because Plaintiffs cannot

identify any similarly situated employee outside of the protected class who received preferential

treatment.  Plaintiffs are all Caucasian-Americans who originate from the United States of

America.  They argue that Luna, a Hispanic-American who originates from Mexico or some

other predominately Hispanic nation, committed the same acts as they did, going off-site for a

break, but was not terminated.  In addition, at times prior to the events leading to their

termination, Luna allegedly received training and special projects that they did not receive.

In *Keri v. Board of Trustees of Purdue University*, the Seventh Circuit explained what

must be produced in order to establish that employees outside of the protected class were treated

more favorably.  458 F.3d 620, 645 (7th Cir. 2006).  The plaintiff must demonstrate that the

employees were similarly situated with respect to "performance, qualifications and conduct,"

and that "the relevant aspects of [their] employment situation were nearly identical to [the]

alleged comparator[s]." *Id.* (citing *Snipes v. Ill. Dep't of Corrs.*, 291 F.3d 460, 463 (7th Cir.

2002); *Nunnery v. Elgin, Joliet & E. Ry.*, 48 F.Supp.2d 1122, 1131 (N.D.Ind. 1999)).

Furthermore, when dealing with disparate disciplinary standards, the plaintiff must normally

establish that "the two employees dealt with the same supervisor, were subject to the same

standards, and had engaged in similar conduct *without such differentiating or mitigating*

*circumstances as would distinguish their conduct or the employer's treatment of them*."  *Radue*

*v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (emphasis added).  Lastly, the

Plaintiff must also show "that the similarly situated employees were treated more favorably at the time of the alleged discrimination against him." *Keri*, 458 F.3d at 645 (citing *Jordan v. City of Gary*, 396 F.3d 825, 834 (7th Cir. 2005)).

In support of Plaintiffs' contention that Luna was similarly-situated to them, they point to the following undisputed facts. Luna, the Plaintiffs and Marvin Gloria, were all Instrument Technicians employed by the Defendant working the same overtime weekend shift on June 10, 2006. All of the technicians went off-site for a breakfast meal break during their over-time shift and all were paid for that time. Yet, only Plaintiffs and Gloria were fired while Luna was retained. Plaintiffs contend they were fired for taking the off-site meal break.

Defendant responds that the reason for their termination was not because the Plaintiffs took an off-site breakfast meal break. Instead, they were terminated for reporting to their immediate supervisor, Gravander, that they took no meal break, thus knowingly receiving compensation for time they knew they had not worked, and for not being forthright about the break when questioned by superiors.

Plaintiffs, along with Technicians Gloria and Luna, went off-site for a breakfast break that lasted at least 30 minutes. Luna did not go to work the following Monday. Brian Gravander, the group leader, asked the Plaintiffs and Gloria if they had taken a lunch break (i.e- a meal break). Antonetti and Nadiger cannot recall whether they responded that they had not taken any such break but they do not offer any evidence to rebut Gravander's account or the notations of "NL" (no lunch) on their time cards. Fuhrer admits that he initially told Gravander that he had not taken a meal break. According to Gravander, when he asked the group (Plaintiffs and Gloria) whether Luna took a lunch break, one of them responded that he did not. Thus,

Gravander did not mark "NL" on Luna's timecard, despite the fact the Luna was paid as if he had not taken a lunch break. Gravander then disabled the lunch function on the Defendant's computerized timekeeping system for the June 10 shift.

After some time passed, one of Defendant's senior supervisors, Larry Adams, approached Luna and engaged him in a conversation about the alleged practice of over billing of clients. Luna acknowledged to Adams that he had been participating in over billing and he proceeded to tell Adams about the June 10 incident. Thereafter in August 2006, all three Plaintiffs and Gloria were approached about the off-site meal break of June 10, 2006 and all four technicians initially stated they could not remember the details. Specifically, Antonetti stated he could not remember where they had gone and that sometimes workers went to McDonald's. Fuhrer stated he did not remember going off-site for breakfast on the date in question. Nadiger stated she did not remember whether they took a break on the date in question.

Antonetti also admitted in a later deposition that the group discussed whether to report that there had been no lunch, not in an effort to deceive, but rather because in his view, the excursion to the restaurant was simply a break, not lunch. However, Defendant's policy is to pay its technicians for breaks that do not exceed twenty minutes in the aggregate and Antonetti concedes the June 10 break lasted approximately 30 minutes.

Defendant interpreted the Plaintiffs' and Gloria's failures to remember the details of the June 10 break along with their representation to Gravander that they had not taken a meal break as an indication of their attempt to deceive. Plaintiffs seek to show that Defendant's interpretation of their inabilities to recollect the circumstances of the June 10 break is, at one extreme, mere pretext masking discriminatory intent, or at the other extreme, irrational,

inappropriate and incapable of forming the basis for the decision to terminate. Plaintiffs contend that other workers routinely took off-site breaks and group leaders, including Gravander, routinely engaged in fraudulently manipulating time cards.

Plaintiffs' contentions ignore the fact that Luna is not similarly-situated to them in all material respects. That is so because 1) Luna did not represent to Gravander that he did not take a meal break during the June 10, 2006 shift (as evidenced by the lack of "NL" notation on his timecard); 2) he admitted his participation in over billing and taking meal breaks but not reporting them; and 3) he is the one who informed the Defendant about the incident in question. By engaging in these mitigating circumstances, he differentiated himself for the otherwise similarly-situated technicians who engaged in behavior perceived by Abbott management to be dishonest and evasive. According to Defendant, this is the basis of its decision to retain him, thereby treating him differently than the other technicians who were fired.

When Adams initially asked Luna whether he had been taking meals off-site and billing for them, Luna acknowledged that he had been doing so by nodding his head. Plaintiffs argue that Luna's nodding affirmatively in response to Adams' question was an insufficient method of demonstrating his willingness to accept the consequences of his actions. This argument is without merit. Nodding one's head in affirmation to a direct question is akin to saying, "Yes." More importantly, that was the interpretation of the response that Adams gave it. When approached by Adams, although Luna could not remember the name of the restaurant where the break occurred, he readily admitted that he had indeed taken a meal break on June 10, gone off-site for breakfast and that the break lasted from 35 to 40 minutes.

This Court concludes Plaintiffs have not satisfied the fourth prong of the *prima facie* showing because Luna was not a "similarly situated" to them for purposes of the *McDonnell Douglas* burden-shifting analysis. It is correct that Luna and the Plaintiffs were all instrument technicians with similar qualifications, working in the same department with the same supervisors. However, it is also correct that Luna did not misrepresent to Gravander that he had no lunch break on June 10, that he reported the incident to a supervisor and was forthcoming when later questioned about what happened.[5] Thus, there are uncontroverted "differentiating or mitigating circumstances" that distinguish Luna's conduct from that of the Plaintiffs and justifies Defendant's decision to retain Luna while firing the Plaintiffs. *See Radue*, 219 F.3d at 618.

Plaintiffs respond that marking "NL" on a timecard is *redundant*, not *fraudulent* given Defendant's timekeeping and billing practices. They contend that Defendant's lower level managers passed on incorrect information to upper management regarding the length of the June 10 meal break, thereby making the break seem excessive when it fact it was not. Finally, they also contend that beginning in 2005, Hispanic technicians received special training and assignments and were promoted over more qualified Caucasian employees and that Luna in particular complained that he was being denied training because he was Hispanic.[6] In making these arguments, Plaintiffs mistakenly blur the issue of Luna being similarly-situated to them

---

[5] Indeed the undisputed facts support the inference that Defendant only became aware of June 10 incident because of Luna and his discussion with Adams. It is common knowledge that the one who informs on others is routinely spared the punishment given to them; this is why they inform in the first place.

[6] Luna denies that he made any such complaints.

with the separate issues of whether there are background circumstances supporting an inference

of reverse discrimination and whether the reasons stated for terminating Plaintiffs are pretextual.

Evidence of dissimilar treatment for similar employees is often used as circumstantial

evidence that a defendant's proffered "legitimate nondiscriminatory reason" is pretextual, not the

other way around. *See Gordon v. United Airlines, Inc.*, 246 F.3d 878, 893 (7th Cir. 2001); *Watts

v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001). Furthermore, an inquiry into pretext is

only necessary once the plaintiff has established the *prima facie* case and the defendant has

asserted a legitimate nondiscriminatory reason for the adverse employment action. *Peele*, 288

F.3d at 327.

As explained above, background circumstances, including evidence that the defendant

had some reason or inclination to discriminate invidiously[7] or something about the facts of the

case are incredulous, are used in lieu of the first prong of a *prima facie* reverse discrimination

case,[8] not the fourth. Thus, Plaintiffs contentions that marking "NL" on a timecard is *redundant*,

not *fraudulent*; that Defendant's lower level managers passed on incorrect information to upper

management regarding the length of the June 10 meal break; and even the allegations regarding

the treatment of Hispanic technicians, are all irrelevant because these issues have no bearing on

Luna's acts of mitigation.

---

[7] Plaintiffs have not submitted any evidence of any such reasons. *See e.g. Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir. 1995) ((successful plaintiff establishing background circumstances by presenting evidence she was the only white employee in the department and nearly all of the decision makers were Hispanic) (cited in *Mills*, 171 F.3d at 455)).

[8] Defendant does not move for summary judgment on the ground that Plaintiffs cannot satisfy this element of the *prima facie* case.

In short, Defendant has presented uncontested evidence that Luna engaged in acts of mitigation sufficient to differentiate him from the otherwise similarly-situated Plaintiffs. Plaintiffs cannot establish a prima facie case of racial or national origin discrimination. Therefore, Defendant's motion for summary judgment on Counts I, II[9] and III is granted.

**B. Retaliation for Allegations of Gender Discrimination**

Plaintiff Nadiger alleges the Defendant retaliated against her in violation of Title VII by terminating her due to her complaints to various members of Defendant's management structure that she was being denied advancement opportunities because of her gender.

Section 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because he or she opposed a practice made unlawful by Title VII, whether or not the employer's action violates Title VII. 42 U.S.C. 2000e-3(a); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir. 1994). Essentially, Title VII protects an employee from "retaliation for complaining about the types of discrimination it prohibits." *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000). A plaintiff may proceed under the direct or the indirect method. To establish a prima facie case for unlawful retaliation under the direct method, "a plaintiff must prove three elements: (1) she engaged in statutorily-protected expression; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (quoting *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001)). Under the indirect

---

[9] Count II arises under 42 U.S.C. §1981. Because a *prima facie* case of race or ethnicity discrimination under this statute has been held to be predicated upon the same elements as such claims under Title VII, they are analyzed together. *Lalvani v. Cook County*, 269 F.3d 785, 789 7th Cir. 2001). Therefore, summary judgment is appropriate for the Sec. 1981 claim as well.

method, the plaintiff must establish a prima facie case of retaliation by showing (1) she engaged in statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (citing *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)).

Nadiger clearly articulated a retaliation claim under the indirect method in the Complaint (¶¶ 48-49) when she alleged Luna, and other unidentified and unnamed employees, were similarly situated to her, had not engaged in protected activity and were not subjected to any adverse employment actions. Defendant now moves for summary judgment on the basis of Nadiger's purported inability to fulfill the fourth prong of the *prima facie* case of the indirect method. However, Plaintiff has not responded to Defendant's argument that she cannot establish a *prima facie* case under the indirect method; instead she opposes the motion for summary judgment by asserting that she can satisfy the requirements of the direct method. Accordingly, this Court will only address the direct method.[10]

Nadiger can point to genuine issues of material fact as to only two of the three prongs of the retaliation analysis under the direct method. First, Nadiger can show she suffered an adverse

---

[10] Nadiger would not be able to sustain her burden of production under the indirect method because she cannot establish the fourth prong of the *prima facie* case, which requires a plaintiff to show that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich*, 457 F.3d at 663. According to the Complaint, Luna is the proper comparator to her because he never complained of gender discrimination, yet none of his breaks were ever scrutinized, nor was he terminated for his involvement in the June 10 off-site meal break. As already explained earlier, Luna is not similarly situated to Nadiger (or the other Plaintiffs) because, while he did go off-site for breakfast as Nadiger did, he engaged in acts of mitigation while she did not.

-15-

employment action- her termination.  Second, she claims she told certain management members about her allegations of gender discrimination.  Those managers Brian Gravander, Dave Taylor, Greg Cichok, Mike Shalosky and John Salisbury.  However, Shalosky, Taylor and Cichok deny Nadiger ever complained to them about gender discrimination.  The duty of a court in summary judgment proceedings is not to weigh evidence; instead it is to determine whether there are genuine issues of material fact present for a factfinder to ultimately resolve.

Informal complaints generally do not constitute statutorily protected activity in some circumstances, especially when the employee is aware of available formal channels of protest yet disregards them.  *See Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003). However, the rationale behind requiring formal complaints is that it must be shown that an employer was aware of the alleged mistreatment and corresponding complaints before he can be found liable for taking adverse action against the complainant on the basis of making the complaints.  *Durkin*, 341 F.3d at 615.  Furthermore, the unambiguous intent of the statute is to prohibit employers from punishing an employee for opposing unlawful employment practices. *See* 42 U.S.C. § 2000e-3.  Nadiger alleges the Defendant terminated her in order to get rid of her before the formal complaint was to be lodged.  Thus, in harmonizing the rationale behind the rule requiring formal complaints and the purpose of the statute with the facts as presented here, her claim should be allowed to proceed as long as she can present evidence of the Defendant's knowledge of her claims of discrimination.  She has presented such evidence from her deposition testimony.  That the only evidence of Defendant's knowledge comes from Nadiger's testimony is no bar to its use in these proceedings because a plaintiff's deposition testimony is affirmative

evidence sufficient to defeat a summary judgment motion as long as it contains specific references to facts, which her testimony so contains. *Sarsha*, 3 F.3d at 1038.

As for the third prong of the analysis, this Court concludes Nadiger has not presented sufficient evidence to support a causal link between her termination and her complaints for summary judgment purposes. A causal link between protected conduct and the retaliatory act may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision. *Culver*, 416 F.3d at 545. Nadiger relies primarily on the alleged proximity of her termination to her informal complaints of gender discrimination as evidence of a causal connection. She also contends that her managers knew the filing of a formal complaint was "imminent".

Several Seventh Circuit cases instruct that temporal proximity alone can be used to establish a causal link in those rare cases when the adverse employment action occurs very close in time after the statutorily protected activity. *Hoffman-Dombrowski v. Arlington Intern. Racecourse, Inc.*, 254 F.3d 644,654 (2001); *Sweeney v. West*, 149 F.3d 550, 557 (1998); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (1989). More recent cases state that while temporal proximity can be useful circumstantial evidence in that it can be used to support the existence of a causal connection; standing alone, it is generally insufficient alone to establish such a connection, even for summary judgment purposes. *Lang v. Illinois Dept. of Children and Family Services*, 361 F.3d 416, 419 (7th Cir. 2004); *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). In fact, the Seventh Circuit has unambiguously held that temporal proximity alone is not dispositive of a causal link and that "suspicious timing may permit a plaintiff to survive summary judgment *if there is other evidence* that supports the

inference of a causal link." *Culver*, 416 F.3d at 546 (emphasis added) (2005); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (2003). The best articulation of a rule was presented in *Lalvani*, where the Seventh Circuit explained "[w]hen an adverse employment action follows close on the heels of protected expression, and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct, the causation element of the prima facie case is typically satisfied." 269 F.3d at 789. Nadiger can satisfy the second prong of the causal link test as announced in *Lalvani*, but she cannot satisfy the first.

The general rule regarding temporal proximity seems to be that in only those extremely rare cases where the adverse action follows the protected activity so closely so as to effectively rule out any other plausible reasons for it, may the plaintiff be able to show a casual link on temporal proximity alone. Examples of such time periods are a few days or less, *Collins v. State of Illinois*, 830 F.2d 692, 705 (7th Cir. 1987), or one week or less, *Holland*, 883 F.2d at 1314-1315. This is not one of those cases.

Defendant remarks in its reply brief that there was a six month period between Nadiger's initial complaint and her termination. After scrutinizing the litigants' statements of facts and the corresponding exhibits, it is clear Nadiger's initial complaint came several months before her termination. Nadiger's deposition testimony is vague as to precisely when she initially complained to a supervisor, but in it she states she began to suspect she was a victim of gender discrimination in February 2006. She also states that over the course of several months she made constant inquiries to several supervisors as to why she was passed over. She then states that Mike Patterson told her he was aware of the "ongoing investigation" in July 2006. Mike Patterson made the decision to terminate Nadiger and the other Plaintiffs in August 2006 after

the events surrounding the June 10 lunch break and all of its fallout. The span of time between

when Nadiger began to complain (soon after her suspicions manifested in February 2006) and

her termination (August 2006) was at least five months. A five month lag cannot be reasonably

characterized as "following close on the heels" of protected activity.

Nadiger states in her opposition brief that she is relying on more than just suspicious

temporal proximity in support of her claim. She states that in addition to the timing of her

termination she can show that her managers, including Patterson, were also aware that a formal

complaint through Defendant's human resources channels was imminent at the time she was

fired.[11] This argument is nothing more than a tautological variant of her first contention- that the

timing of her termination is suspicious and indicative of a causal link.

In order to prove a causal link between protected expression and retaliation, one must

obviously show that the employer had something to retaliate against. *Durkin*, 341 F.3d at 614.

That is the function served by the formal complaint. Here, there was no formal complaint

lodged, only informal complaints, which Nadiger alleges resulted in her termination. For

purposes of this motion, the Court accepts that Nadiger's informal complaints and inquiries were

sufficient to provide the Defendant with notice of her claims. However, if the filing of a formal

complaint and a subsequent termination is not by itself enough to support the existence of a

causal link, which it is not except in the rarest of cases, *Culver*, 416 F.3d at 546; then knowledge

of an impending complaint and subsequent termination cannot suffice either. This is because the

---

[11] Nadiger's view of what is "imminent" is puzzling. She contends Patterson and the other supervisors were aware of an imminent formal complaint because of Taylor, to whom she told she was "going to talk to HR." (Deposition of Nadiger, p. 209.) However just a few lines later she states she "told him [she] didn't know at that point what [she] was going to do in the immediate future. But then [she] got terminated, so--." (Id. at 210.)

fact that the employer knew of an impending formal complaint before terminating the plaintiff adds no inferential probative value beyond that already provided by the temporal proximity between the informal complaints themselves and the retaliatory act.

Nadiger's characterization of her termination as an attempt by Defendant to insulate itself from the damages of a formal complaint of sexual discrimination is belied by the fact that Libow, a member of Defendant's senior management, told Nadiger to go to human resources and even provided her with the contact information of an individual to whom she could speak. Nadiger went to Libow on the suggestion of Shalosky, one of the supervisors Nadiger claims is part of the group who retaliated against her by firing her.

Plaintiff Nadiger does not point to any other evidence in support of a causal connection between her complaints and her termination. Thus, she cannot sustain her burden of production of the third prong of the *prima facie* case under the direct method and there is no need to examine whether the Defendant has articulated a legitimate nondiscriminatory reason for her termination. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 364 (7th Cir. 1998).

Therefore, Defendant's motion for summary judgment on Count IV of the Complaint is granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts I , II, III and V of the Complaint. Civil case terminated.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

-20-

Dated: **February 22, 2008**